IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| THOMAS E. PEREZ, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | MEMORANDUM DECISION AND ORDER |
| **Plaintiff,** | |
| v. | Case No. 2:15-cv-500-PMW |
| FOG RIVER, LLC, a Utah limited liability company; and JOHN BOWEN, an individual, | |
| **Defendants.** | Chief Magistrate Judge Paul M. Warner |

On May 27, 2015, all parties consented to having Chief United States Magistrate Judge Paul M. Warner conduct all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1]  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Before the court are the following motions:  (1) Thomas E. Perez's ("Plaintiff") Motion for Partial Summary Judgment;[2] (2) Fog River, LLC's ("Fog River") and John Bowen's ("Mr. Bowen") (collectively, "Defendants") Motion for Mediation;[3] (3) Defendants' Motion for Leave to Amend Answer;[4] (4) Defendants' Motion for Extension of Time

_____

[1] Dkt. no. 13.

[2] Dkt. no. 22.

[3] Dkt. no. 21.

[4] Dkt. no. 23.

under Rule 56(d);[5] and (5) Plaintiff's Motion to Quash Defendants' Notice of Rule 30(b)(6) Deposition.[6]

The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motions on the basis of the written memoranda. *See* DUCivR 7-1(f).

## BACKGROUND

Fog River is owned and operated by Mr. Bowen, his brother Kent Bowen, and Jeff Fort.[7] Fog River processes and distributes fish and seafood products from its facilities in Salt Lake City, Utah.[8] Fish and shellfish from the sea, farms, and other locations are shipped to Fog River where employees cut, process, and package it for distribution.[9] Mr. Bowen performs general manager functions and handles the day-to-day operations of the business, including making decisions that affect the terms and working conditions of Fog River's employees.[10]

In October 2014, the Wage and Hour Division ("WHD") of the Department of Labor investigated Fog River for compliance with the provisions of the Fair Labor Standards Act

---

[5] Dkt. no. 29.

[6] Dkt. no. 27.

[7] Dkt. no. 22-2 at ¶ 4.

[8] *Id.* at ¶ 25.

[9] *Id.* at ¶¶ 25-27.

[10] *Id.* at ¶ 6.

("FLSA").[11]  As the Secretary of the United States Department of Labor, Plaintiff is authorized

to enforce the provisions of the FLSA.  *See* 29 U.S.C. §§ 201 to 219.  In particular, Plaintiff may

recover back wages and liquidated damages, as well as seek injunctive relief, on behalf of

affected employees.  *Id.* §§ 207, 211(c), 215(a)(2), 215(a)(5), 216(c), and 217.

At the time of the WHD investigation, Fog River employed approximately 13 employees

who were paid on an hourly basis.[12]  In Mr. Bowen's initial discussion with the WHD

Investigator, Sheffield Keith ("Investigator Keith"), Mr. Bowen admitted that Fog River only

paid employees their regular rates or "straight time" and not the required time and one-half rate

for hours worked in excess of 40 hours in a work week.[13]  Mr. Bowen agreed to review Fog

River's payroll information for its hourly employees and identify all hours worked in excess of

40 hours each week for a two year period.[14]

On October 31, 2014, Investigator Keith emailed an Excel spreadsheet template to Mr.

Bowen to input hours worked and pay rate information for the subject employees.[15]  On

December 2, 2014, Mr. Bowen emailed the completed spreadsheets to Investigator Keith.[16]  The

spreadsheets included the hours worked, pay rate information, overtime hours worked, and the

---

[11] Dkt. no. 22 at 3.

[12] Dkt. no. 22-2 at ¶ 4.

[13] *Id.* at ¶ 7.

[14] *Id.* at ¶ 7.

[15] *Id.* at ¶¶ 8 and 9.

[16] *Id.* at ¶ 9.

amounts due for overtime for each employee.[17]  On December 4, 2014, Investigator Keith went to Fog River to confirm the back wage computations.[18]  He spot checked the spreadsheets against the payroll records and found that they matched.[19]

Investigator Keith explained to Mr. Bowen that an amount equal to the amount of the unpaid wages would be assessed as liquidated damages and asked Mr. Bowen to provide reasons why they should not be assessed.[20]  In response, Mr. Bowen stated that Fog River paid its employees higher rates than the industry average, he did not believe the overtime premium requirement applied because Utah was a "right to work" state, and Fog River's employees voluntarily worked overtime hours.[21]  Mr. Bowen further indicated that if he had known, he would have limited overtime worked and hired more employees.[22]

Investigator Keith also determined that Fog River had improperly paid another employee, David Antonio Granillos, a flat weekly rate and failed to maintain any record of the hours he worked or pay him overtime compensation for hours he worked over 40 hours a week.[23]  On January 5, 2015, Investigator Keith emailed Mr. Bowen to request a back wage determination for Mr. Granillos and explained that he would have to reconstruct Mr. Granillos's hours worked if

---

[17] *Id.* at ¶ 9.

[18] *Id.* at ¶ 10.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at ¶ 11.

Fog River did not have time records for him.[24]  Mr. Bowen responded that unlike other

employees, Mr. Granillos worked 5 days per week and approximately 40 hours per work week.[25]

On January 21, 2015, Investigator Keith met with Mr. Bowen at Fog River to review the

results of his investigation.[26]  Investigator Keith explained that the WHD's findings

demonstrated that Fog River violated provisions of the FLSA by failing to (1) pay 12 employees

the overtime rate for hours worked over 40 in a work week and (2) maintain records of hours

worked for Mr. Granillos.[27]  Investigator Keith provided form WH-55 to Mr. Bowen that showed

a total amount of back wages due for the 12 employees as $65,352.38, including $5,562 for Mr.

Granillos.[28]  He then further explained that an equal amount of back wages owed to each

employee had been assessed as liquidated damages.[29]

While Mr. Bowen agreed to comply with the FLSA in the future, he did not agree to pay

the assessed back wages and liquidated damages and again stated that the violations were due to

lack of knowledge about the rules.[30]  On February 17, 2015, Investigator Keith received written

---

[24] *Id.*

[25] *Id.*

[26] *Id.* at ¶ 13.

[27] *Id.*

[28] *Id.* at ¶ 14.

[29] *Id.*

[30] *Id.* at ¶ 15.

correspondence from Mr. Bowen indicating that Defendants refused to pay all of the assessed back wages and/or liquidated damages.[31]

On February 26, 2015, Investigator Keith and his supervisor, Assistant District Director Kathy Milton ("ADD Milton"), met with Mr. Bowen at Fog River.[32]  ADD Milton explained that Defendants were required to pay the assessed back wages and liquidated damages but she offered to set up a payment plan for Defendants.[33]  ADD Milton and Investigator Keith informed Mr. Bowen that employees are due both back wages and liquidated damages under the FLSA unless Defendants have a good faith reason for not complying with the FLSA.[34]  Investigator Keith did not find any evidence that Defendants attempted to comply with the FLSA.[35]  While Mr. Bowen indicated to Investigator Keith that Defendants had sought legal counsel through this process, he never claimed that Fog River's employees were exempt from the FLSA's requirements.[36]  On March 2, 2015, Investigator Keith received written correspondence from Mr. Bowen indicating that Defendants did not intend to pay liquidated damages in this matter.[37]

---

[31] *Id.* at ¶ 16.

[32] *Id.* at ¶ 17.

[33] *Id.*

[34] *Id.* at ¶ 19.

[35] *Id.* at ¶ 23.

[36] *Id.* at ¶¶ 23 and 24.

[37] *Id.* at ¶ 18.

ADD Milton reviewed Investigator Keith's back wage computations for Mr. Granillos and instructed him to recalculate them.[38]  His new calculation resulted in an adjusted amount of $6,831.59, which he informed Mr. Bowen of by telephone.[39]  In addition, prior to Plaintiff filing the complaint in this matter on July 15, 2015, Investigator Keith modified the data in the spreadsheets for each employee to reflect back wages starting from July 15, 2013, in order to comply with the two year statute of limitations.[40]  One of the employees considered in the original calculation actually worked outside the limitations period, thus resulting in a modified calculation of $55,029.23 for the 11 hourly employees from July 15, 2013 to October 26, 2014, the last date for which Plaintiff had Defendants' payroll records.[41]

Mr. Bowen states that Fog River was previously owned by Sysco Intermountain Food Service and that he and the other owners of Fog River have never owned a business with hourly employees.[42]  Mr. Bowen indicates that when Fog River's business increased, he offered the extra hours to their employees rather than hiring additional employees.[43]  Fog River's employees did not request overtime payment, nor did anyone else they consulted suggest that overtime

---

[38] *Id.* at ¶ 20.

[39] *Id.*

[40] *Id.* at ¶ 30.

[41] *Id.* at ¶¶ 10 and 30.

[42] Dkt. no. 41-1 at ¶¶ 2 and 3.

[43] *Id.* at ¶ 4.

payment was required.[44]  Mr. Bowen states that Defendants were not aware of the requirements of the FLSA.[45]

Mr. Bowen contends that during the investigation, Investigator Keith stated that he believed Defendants had in good faith tried to follow the law and that he would suggest to his superiors that Defendants not be assessed liquidated damages.[46]  Mr. Bowen asserts that Investigator Keith later informed him that liquidated damages would be assessed because of WHD policy by which WHD employees were evaluated based on the size of the awards they were able to obtain.[47]  Mr. Bowen states that Investigator Keith further noted that his position as an investigator had changed from teaching employers how to comply with the FLSA to a "hardcore" position.[48]

Mr. Bowen asserts that based upon his observation of Mr. Granillos and his work, he believes Mr. Granillos only worked an average of 40 hours per week, rather than the 46 hours Investigator Keith calculated.  Mr. Bowen asserts that since Defendants were informed that they should be paying overtime, they have restructured their payroll system, paid at least $48,000 in back wages to their employees, and installed a time clock to accurately track employees' hours.[49]

---

[44] *Id.* at ¶ 5.

[45] *Id.*

[46] *Id.* at ¶ 12.

[47] *Id.*

[48] *Id.*

[49] *Id.* at ¶¶ 8 and 20.

## **STANDARD OF REVIEW**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issues as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The court examines "the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).  The burden of establishing the absence of a genuine issue of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the moving party "need not negate the nonmovant's claim, but need only point out to the district court that there is an absence of evidence to support the nonmoving party's case." *Universal Money Ctrs., Inc.*, 22 F.3d at 1529.  Once the moving party has met its burden, the burden shifts to the nonmovant to designate "specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id.* (quotation and citation omitted).  The court will consider a dispute to be genuine only when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The "mere existence of a scintilla of evidence" in support of the nonmoving party's position will not defeat a well-supported motion for summary judgment. *Anderson*, 477 U.S. at 252.

## DISCUSSION

I.      **Plaintiff's Motion for Summary Judgment**

Plaintiff moves this court to enter an order granting partial summary judgment on each of

Plaintiff's claims for the time period of July 15, 2013 through the pay period ending October 26,

2014.  Specifically, Plaintiff seeks an order:  (1) requiring Defendants to pay the uncompensated

wages due to employees in the amount of $55,029.23; (2) granting liquidated damages in the

amount of $55,029.23 pursuant to § 216(c) of the FLSA; and (3) permanently restraining

Defendants from continuing the violations alleged in Plaintiff's Complaint pursuant to § 217 of

the FLSA.

Defendants concede that they are employers and that Fog River is an enterprise engaged

in commerce for purposes of the FLSA.  *See generally* 29 U.S.C. ¶ 203.  Defendants argue,

however, that they have already paid at least $48,000 in back wages to their employees.  Thus,

Defendants contend, assuming their employees are not exempt and Defendants are liable for

back wages, the amount they owe would be significantly less than what Plaintiff alleges.

Defendants urge this court to conclude that because the amounts sought by Plaintiff and the

amounts already paid by Defendants are different, there are issues of material fact precluding

summary judgment.  In addition, Defendants argue that liquidated damages should not be

imposed because they acted in good faith.  Finally, Defendants contend that an injunction is

unnecessary as Defendants have demonstrated that they have changed their business practices in

order to comply with the FLSA.

### A.  Liability under the FLSA

Under the FLSA, an employer is forbidden from employing

> any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

*Id.* § 207(a)(1).  Thus, to establish that Defendants are liable to pay their employees overtime back wages, Plaintiff must show that:  (1) an employment relationship exists; (2) Fog River is an "enterprise" engaged in commerce; (3) Defendants failed to pay their employees overtime as required by the FLSA; and (4) there exists a reasonable estimate of the amount and extent of the work for which the employees were not paid.  *See* 29 U.S.C. §§ 207(a); *see also Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (holding that an employee "has carried out his burden [under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference"), *superseded by statute on other grounds*, Portal–to–Portal Act of 1947, Pub. L. No. 80–49, 61 Stat. 84.

As noted above, it is undisputed that Mr. Bowen, who acts as the general manager of Fog River and controls its day-to-day operations, is an "employer" under the FLSA.[50]  *See* 29 U.S.C. § 203(d).  It is also undisputed that Fog River is an "[e]nterprise engaged in commerce" under the FLSA as Defendants have "employees engaged in commerce or in the production of goods for commerce" and their annual gross volume of sales is above $500,000.[51]  *Id.* § 203(s)(1). Thus, as Defendants concede, the first two elements have been met.

---

[50] Dkt. no. 41 at ¶ 8.

[51] *Id.* at ¶¶ II and B.

While Defendants acknowledge that they failed to pay their employees overtime under the FLSA, they argue that their employees should be deemed exempt.  Specifically, Defendants assert that Plaintiff has published regulations governing a repealed section of the FLSA, which exempted from overtime pay "any employee employed in the canning, processing, marketing, freezing, curing, storing, packing for shipment, or distributing of any kind of fish shellfish, or other aquatic forms of animal or vegetable life, or any byproduct thereof."  29 U.S.C. § 213(b)(4) (repealed 1974, effective 1976).  Defendants contend that this repealed portion of the FLSA describes the type of work their employees perform.  Defendants argue that because Plaintiff has continued to publish regulations in the Code of Federal Regulations that govern this repealed portion of the FLSA, Defendants' employees should be deemed exempt from overtime pay as if that portion of the FLSA were still in effect.[52]

The court finds Defendants' argument to be unpersuasive.  Defendants do not argue that they relied upon those regulations in determining that their employees were exempt.  29 C.F.R. §§ 784.136 to 784.156.   Nor do the affidavits submitted in this matter establish that Defendants even read, let alone relied upon, the interpretive provisions of the repealed statute contained in

---

[52] In his motion for partial summary judgment, Plaintiff discusses at length another section of the FLSA currently in force.  Specifically, section 29 U.S.C. § 213(a)(5) exempts from overtime employees who are employed "in the catching, taking propagating, harvesting, cultivating, or farming of any kind of fish, shellfish, crustacea, sponges, seaweeds, or other aquatic forms of animal and vegetable life, or in the *first processing*, canning or packing of such marine products at sea as an incident to or in conjunction with, such fishing operations, including the going to and returning from work and loading and unloading when performed by any such employee."  *Id.* § 213(a)(5) (emphasis added).  Plaintiff argues that Defendants' employees are not engaged in this type of "first processing" of marine products.  However, in their opposition memorandum, Defendants concede that their employees are not exempt under this section but argue their employees should be deemed exempt based on the continued publication of 29 C.F.R. §§ 784.136 to 784.156.

the Code of Federal Regulations.  Rather, Defendants assert that it is inequitable to permit Plaintiff to "tell the world that people doing this [job] are exempt from the overtime requirements of the FLSA and then sue [their employer] for violating the Act."[53]  However, the fact that the Code of Federal Regulations has not been updated to reflect that a portion of the FLSA has been repealed does not justify Defendants' failure to abide by the current version of the FLSA.  As noted by the Fifth Circuit, Defendants cannot "blindly operate a business without making any investigation as to their responsibilities under the labor laws.  Apathetic ignorance is never the basis of a reasonable belief." *Barcellona v. Tiffany English Pub. Inc.*, 597 F.2d 464, 469 (5th Cir. 1979).  Had Defendants' sought legal counsel, any competent attorney would have informed Defendants that reliance on 29 U.S.C. § 213(b)(4) would be in error.  Defendants' argument is undoubtedly a post hoc rationalization for failing to pay their employees overtime wages in accordance with the FLSA.  Ignorance of a law does not provide a reasonable defense for failing to follow it.  Accordingly, this court concludes that Defendants' employees are not exempted from overtime and Defendants have violated the FLSA by failing to pay their employees overtime wages.

Plaintiff has provided a reasonable estimation of the amount of back wages owed to Defendants' employees from July 15, 2013 (two years preceding the filing of the Complaint) through October 26, 2014 (the last pay period for which Plaintiff has records).  Fog River kept a record of the number of hours worked for the employees at issue, except for Mr. Granillos.  With respect to the employees for which Fog River kept records of hours worked, there are no factual disputes relative to the number of hours worked.  Investigator Keith obtained the records he used

---

[53] Dkt. no 41 at 18.

to calculate the overtime wages owed to each of those employees from Fog River.  Thus, there are no material facts in dispute with regard to the 10 hourly employees and summary judgment is appropriate.

The Supreme Court has held that when an employer does not keep accurate records of the hours its employees worked, as in Mr. Granillos's case, a plaintiff in a FLSA action can meet his burden

> if he proves that [the employee] has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to [negate] the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson*, 328 U.S. at 687-88.  Because Fog River did not keep hourly records for Mr. Granillos, Investigator Keith estimated that he worked an average of 46 hours per week from information obtained in his investigation, including comparing the number of overtime hours worked by other fish cutters.  For example, fish cutters Martin Chacon and Martin Teran Torres worked significantly more than 46 hours per week on a regular basis.  When the 46-hour estimate is compared to overtime hours other fish cutters worked, the court concludes that this amount was just and reasonable.  Other than Mr. Bowen's self-serving affidavit stating that he "believe[s] that [Mr. Granillos] worked 40 hours per week based on [his] observation of him and his work,"[54] Defendants have failed to provide any "evidence of the precise amount of work performed" or otherwise challenge the reasonableness of Plaintiff's estimate.  *Anderson*, 328 U.S. at 687-88.

---

[54] *Id.* at ¶ 13.

Because Defendants have failed to rebut Plaintiff's estimate, the court concludes that Defendants must pay the amount of overtime damages owed to Mr. Granillos as set forth by Plaintiff.

Based on the foregoing, this court concludes that Defendants violated the FLSA by failing to pay overtime wages.  As such, this portion of Plaintiff's motion for partial summary judgment is **GRANTED**.  Accordingly, Defendants must pay the uncompensated wages due to employees in the amount of $55,029.23 for the time period of July 15, 2013 to October 26, 2014, offset by any payments paid to those employees since the inception of this case.

### B.  Liquidated Damages

Under the FLSA, "any employer who violates [the minimum wage or overtime provisions] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  However, the FLSA also provides that "if the employer can establish that his conduct was both in good faith and based on a reasonable belief that his conduct was not in violation of the FLSA, the court may, in its discretion, award less or no liquidated damages."  *Mumby v. Pure Energy Servs (USA), Inc.*, 636 F.3d 1266, 1272 (10th Cir. 2011); *see also* 29 U.S.C. § 260.  "While the reasonableness requirement is an objective standard, the good-faith inquiry is subjective, requiring an 'honest intention to ascertain and follow the dictates' of the FLSA."  *Id.* (quoting *Dep't of Labor v. City of Salupa, Okla.*, 30 F.3d 1285, 1289 (10th Cir. 1994)).  Defendants bear the "'difficult' burden of proving both subjective good faith and objective reasonableness, 'with double damages being the norm and single damages the exception.'"  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)).

Defendants argue that they acted in good faith because (1) the requirements of the FLSA are not "common knowledge among the general population," (2) they adhered to the obligations of which they were aware and changed their policies upon learning of their violations, and (3) they pay higher than average market wages.[55]  Defendants also argue that Investigator Keith's statement to Mr. Bowen that he would recommend to his superiors that no liquidated damages be imposed warrants the denial of summary judgment on this issue.

The court finds that there are no material facts in dispute regarding the liquidated damages provision of the FLSA.  The court concludes that Defendants have met their burden of establishing that they acted in good faith and with reasonableness.  Accordingly, the court elects to exercise its discretion and reduces liquidated damages to $1.00 per employee.  *See Mumby*, 636 F.3d at 1272.  Thus, this portion of Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.

### C.  Injunctive Relief

Plaintiff moves this court for a permanent injunction barring Defendants from future violations of the FLSA.  Defendants respond by arguing that no injunction is necessary to ensure their future compliance with the FLSA.  Specifically, Defendants contend that once they were made aware of their obligations under the FLSA, they changed their practices in order to comply with it.

District courts are authorized to award injunctive relief against violations of the FLSA. 29 U.S.C. § 217.  The purpose of permanent prospective injunctions is remedial in nature rather than punitive.  *Metzler v. IBP, Inc.*, 127 F.3d 959, 963 (10th Cir. 1997).  Plaintiff bears the burden

---

[55] *Id.* at 16.

of demonstrating that an injunction is necessary.  *See id.*  Courts weigh various factors when

deciding whether to grant an injunction, "including the employer's previous conduct, its current

conduct, and the reliability of its promises of future compliance."  *Id.*  When a past violation of

the FLSA is found, "courts balance that finding against factors indicating a reasonable likelihood

that the violation will not recur, such as the employer's intent to comply, extraordinary efforts

taken to prevent recurrence, the absence of repetitive violations, and the absence of bad faith."

*Id.* at 963-64.

    As noted by the Tenth Circuit, "[p]rospective injunctions are an essential tool to

effectuate the policy of the FLSA because the cost of compliance is placed on the employer

rather than the employee or the government."  *Id.* at 963 (citing *Brock v. Big Bear Market No. 3*,

825 F.2d 1381, 1383 (9th Cir. 1987)).  Prospective injunctions do not impose an undue hardship

on employers because they merely require employers to comply with the FLSA, which they are

required to do anyway.  *Id.*

    During the investigation, Mr. Bowen acknowledged Defendants' overtime compensation

violations and agreed comply with the FLSA in the future.  The court concludes that this

agreement, however, is questionable.  Defendants did not make efforts to pay their employees

back wages until after Plaintiff filed this lawsuit.  While Defendants argue that they have taken

steps to comply with the FLSA and are now in compliance with it, "current compliance alone,

particularly when achieved by direct scrutiny of the government, is not sufficient ground for

denying injunctive relief."  *Id.* (quoting *Big Bear Market*, 825 F.2d at 1383).  Accordingly, this

court concludes that Defendants' conduct necessitates a permanent injunction to ensure

compliance with and to prevent future violations of the FLSA and summary judgment on this issue is appropriate.

## II.     Defendants' Motion for Mediation

Defendants seek an order referring this case to mediation on the grounds that it is inequitable for Plaintiff to have filed this lawsuit when it continues to publish regulations in the Code of Federal Regulations that govern the repealed portion of the FLSA discussed above. Because the court has granted partial summary judgment on the issue Defendants seek to mediate, Defendants' motion for mediation has been rendered **MOOT**.

## III.     Defendants' Motion for Leave to Amend Answer

Defendants move this court for leave to amend their answer to add the following defense:

> Plaintiff publishes and has published regulations in the Code of Federal Regulations at 28 [sic] CFR Part 784 stating that the work performed by the Defendants' employees is exempt from the overtime provisions of the Fair Labor Standards Act and it is inequitable to allow the Plaintiff to publicly state that said work is exempt and then allow Plaintiff to sue the Defendants for the same work.[56]

However, as already decided by the court, this defense fails as a matter of law.  While Rule 15(a)(2) states that leave to amend shall be freely given when justice requires, leave to amend may be denied upon a showing that amendment would be futile.  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  Because Defendants' proposed amended answer would be futile, this court **DENIES** Defendants' motion for leave to amend answer.

## IV.     Defendants' Motion for Extension of Time Under Rule 56(d)

Defendants seek an order under Rule 56(d) of the Federal Rules of Civil Procedure allowing additional time for discovery regarding the calculation of their employee's overtime and

---

[56] Dkt. no. 23 at 7.

the request for liquidated damages as argued in Plaintiff's motion for partial summary judgment. In response, Plaintiff asserts that Defendants have not demonstrated that additional discovery is necessary for them to adequately oppose Plaintiff's motion for partial summary judgment.

Under Rule 56(d), the nonmovant must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment. Fed. R. Civ. P. 56(d). Summary judgment should not be entered "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250 n.5. However, in seeking protection under Rule 56(d), the nonmoving party must provide an affidavit or declaration "stating with specificity how the desired time would enable [the nonmoving party] to meet its burden in opposing summary judgment." *Guthrie v. Sawyer*, 970 F.2d 733, 738 (10th Cir. 1992) (citation omitted).

Defendants have provided declarations identifying deposition topics but Defendants fail to adequately explain how this requested discovery is essential to opposing Plaintiff's motion. In particular, Defendants seek discovery regarding (1) Investigator Keith's recommendation that Defendants not be required to pay liquidated damages, (2) the Excel spreadsheet Defendants completed showing the number of hours worked by their employees, (3) Fog River's employees' rounding errors on their timesheets, and (4) the difference in the amounts sought by Plaintiff during the investigation and the amounts sought in this action. The court will address each topic in turn.

First, Investigator Keith's subjective recommendation to his supervisors regarding liquidated damages is irrelevant. The burden is on Defendants to present their own facts, not testimony by Investigator Keith, establishing their efforts to ascertain and follow the

requirements of the FLSA were made in good faith.  Defendants have not shown how Investigator Keith's testimony will help them oppose Plaintiff's motion for partial summary judgment.

Second, the data contained in the Excel spreadsheet was input by Defendants.  The amount of back wages due is premised on the information Defendants provided using their own payroll data.  Investigator Keith checked Fog River's payroll records against the spreadsheet to verify that they matched.  Defendants have not specified any facts they need regarding the Excel spreadsheet that Plaintiff could provide to them in order to adequately oppose Plaintiff's motion.  Essentially, Defendants want a second bite at the apple.

Third, whether Defendants' employees rounded their hours when submitting their timesheets is irrelevant.  Even assuming Defendants' records are not accurate, this information is immaterial to Plaintiff's motion unless Defendants have records of the correct hours that were not disclosed during the investigation.  This is the first time Defendants have raised this issue and they have not explained how discovery from Plaintiff regarding it would help in opposing Plaintiff's motion.

Finally, Defendants have failed to explain what additional discovery they need regarding the difference in the amount sought by Plaintiff after the investigation and the amount Plaintiff seeks in this action.  The discrepancy was explained in detail in Investigator Keith's affidavit and Defendants have not specified how additional facts from Plaintiff would aid them in opposing Plaintiff's motion.

Based on the foregoing, Defendants' Rule 56(d) motion is **DENIED**.

**V.      Plaintiff's Motion to Quash Defendants' Notice of Deposition**

Plaintiff seeks an order quashing Defendants' notice of Rule 30(b)(6) deposition or an order requiring Defendants to show cause why the deposition is necessary before this court rules on Plaintiff's motion for partial summary judgment.  Defendants seek to depose Investigator Keith regarding the topics discussed above.  Because the court has ruled on these issues, Investigator Keith's deposition is unnecessary.  As such, Plaintiff's motion to quash is **GRANTED**.

<u>**CONCLUSION**</u>

Based on the foregoing, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's motion for partial summary judgment[57] is **GRANTED IN PART AND DENIED IN PART**:

    a.   Defendants must pay the uncompensated wages due to employees in the amount of $55,029.23 for the time period of July 15, 2013 to October 26, 2014, offset by any payments paid to those employees since the inception of this case;

    b.   Defendants must also pay liquidated damages of $1.00 to each employee; and

    c.   Defendants are permanently enjoined from future violations of the FLSA;

(2) Defendants' motion for mediation[58] has been rendered **MOOT**;

(3) Defendants' motion for leave to amend their answer[59] is **DENIED**;

---

[57] Dkt. no. 22.

[58] Dkt. no. 21.

[59] Dkt. no. 23.

(4) Defendants' motion for an extension of time under Rule 56(d)[60] is **DENIED**; and

(5) Plaintiff's motion to quash[61] is **GRANTED**.

**IT IS SO ORDERED**.

DATED this 30th day of March, 2017.

BY THE COURT:

PAUL M. WARNER
Chief United States Magistrate Judge

---

[60] Dkt. no. 29.

[61] Dkt. no. 27.